NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 9 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10437 |
| Plaintiff-Appellee, | D.C. No. 2:18-cr-00026-KJD-VCF-1 |
| v. | |
| JACQUELINE MOORE, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Submitted April 2, 2020**
Pasadena, California

Before: WARDLAW, MURGUIA, and MILLER, Circuit Judges.

Jacqueline Moore appeals her conviction and sentence following a jury trial

for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a)(2). We have jurisdiction under 18 U.S.C. § 3742 and 28

U.S.C. § 1291, and we affirm.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

1.    Moore challenges the district court's denial of her *Batson* challenge to the government's strike of a black female juror.  We review a district court's application of the three-part *Batson* framework de novo:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race.  Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question.  Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*United States v. Alvarez-Ulloa*, 784 F.3d 558, 565 (9th Cir. 2015) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 328–29 (2003)).  At this third step, the district court "must decide not only whether the reasons stated are race-neutral, but whether they are relevant to the case, and whether those stated reasons were the prosecutor's genuine reasons for exercising a peremptory strike, rather than pretexts invented to hide purposeful discrimination."  *United States v. Mikhel*, 889 F.3d 1003, 1029 (9th Cir. 2018) (quoting *Green v. LaMarque*, 532 F.3d 1028, 1030 (9th Cir. 2008)).  The district court's findings are reviewed "deferentially, for clear error."  *United States v. Hernandez-Herrera*, 273 F.3d 1213, 1218 (9th Cir. 2001) (citing *Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (en banc)).

Here, the parties dispute only the third step of the *Batson* inquiry.  After the government explained that it struck the juror because she had a relative who was a convicted felon, "[not] because she was black or because she was a female," the district court determined that the reasons stated by the government were "race

2

neutral," "relevant to the case," and "genuine reasons for exercising the peremptory strike rather than pretext intended to hide purposeful discrimination." The district court's finding was not clearly erroneous, especially where the government also struck white jurors who had relatives convicted of a felony and did not strike a black male juror. *See Cook v. Lamarque*, 593 F.3d 810, 817 (9th Cir. 2010) (finding prosecutor's rationale "legitimate and not pretextual" where similarly situated white jurors were also not permitted to serve). While the district court did not expressly address Moore's gender-based claim, thus meriting our de novo review, *see Alvarez-Ulloa*, 784 F.3d at 565–66, Moore nevertheless fails to carry her burden of persuasion to show purposeful discrimination on the basis of gender, as Moore fails to specifically explain how the government's strike was motivated by gender discrimination, *see Yee v. Duncan*, 463 F.3d 893, 898 (9th Cir. 2006) ("[T]he ultimate burden of persuasion regarding racial [or in this case gender] motivation rests with, and never shifts from, the opponent of the strike." (second alteration in original) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam))).

2.   Moore next contends that the district court erred when it denied her motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 based on insufficient evidence. Here, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found separate possession of the gun and ammunition beyond a reasonable doubt. *See United States v. Reed*, 575

F.3d 900, 923 (9th Cir. 2009). The jury heard evidence that the firearm was "shoved up in the dashboard," which is "an area not commonly used by any drivers . . . for a normal purpose." By contrast, the ammunition was found in Moore's purse, which she carried freely on her person when she got out of the vehicle and closed the door. The jury also heard evidence that the vehicle belonged to Moore, and that the firearm had Moore's DNA on it. Therefore, the district court did not err when it denied Moore's motion for judgment of acquittal.

3.      Next, Moore argues that the district court abused its discretion when it permitted one of the arresting police officers to testify on the difference between actual and constructive possession, which Moore contends rendered the officer's lay witness testimony expert in nature. This argument is unavailing. "A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education . . . ." *United States v. Gadson*, 763 F.3d 1189, 1208 (9th Cir. 2014). Here, the officer based his testimony on his training and experience as a law enforcement officer, and the testimony was helpful to explain Moore's jailhouse phone calls. *See* Fed. R. Evid. 701; *Gadson*, 763 F.3d at 1209–10 (allowing lay officer's interpretation of intercepted phone calls). In any event, any purported error would have been harmless because the district court later instructed the jury on the elements of "possession." *See United States v. Wells*, 879 F.3d 900, 923 (9th Cir. 2018) ("Generally, if we conclude that

4

evidence has been improperly admitted, 'we consider whether the error was harmless.'" (quoting *United States v. Bailey*, 696 F.3d 794, 802–03 (9th Cir. 2012))).

4.  The district court did not abuse its discretion when it gave its jury instruction on "possession." *See United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1991). Moore does not contend that the district court's instruction was a misstatement of the law; instead, she claims that the court should have given the Ninth Circuit model instruction. However, "district judges are not required to give model jury instructions," *United States v. Vallejo*, 237 F.3d 1008, 1025 n.8 (9th Cir. 2001), and "trial judge[s are] given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented," *United States v. Ayers*, 924 F.2d 1468, 1475 (9th Cir. 1991) (quoting *United States v. Cruz*, 783 F.2d 1470, 1472 (9th Cir. 1986)).

5.  Nor did the district court abuse its discretion when it declined to continue Moore's trial after she received a transcript of a recorded interview with the victim.[1] *See United States v. Rivera-Guerrero*, 426 F.3d 1130, 1138 (9th Cir. 2005). A four-factor test guides our analysis:

---

[1] Citing the government's alleged failure to timely disclose the victim's statement, Moore requests that we review the grand jury testimony to determine whether it contains material that Moore would have been entitled to receive during trial under the Jencks Act, 18 U.S.C. § 3500(b). Moore waived this issue by failing to raise it in the district court. *See* Fed. R. Crim. P. 6(e)(3)(F). But even if it were not waived, we would decline to grant Moore's request, as she has failed to demonstrate a particularized need based on little more than mere speculation. *See United States v.*

5

[1] the extent of [Moore's] diligence in [her] efforts to ready [her] defense prior to the date set for hearing . . . [2] how likely it is that the need for a continuance could have been met if the continuance had been granted . . . [3] the extent to which granting the continuance would have inconvenienced the court and the opposing party, including its witnesses . . . [and] [4] the extent to which [Moore] might have suffered harm as a result of the district court's denial.

*Id.* at 1138–39 (quoting *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985)). "None of the first three factors is ordinarily dispositive" but Moore must "establish the fourth—prejudice." *Id.* at 1139. Here, it is clear that no prejudice resulted from the denial. Moore's counsel had enough time to use the recorded statement to cross-examine the victim, who had already been impeached at trial. Moreover, any purported error would have been harmless given the overwhelming trial evidence against Moore. *See United States v. Kloehn*, 620 F.3d 1122, 1130 (9th Cir. 2010) ("An arbitrary denial of a continuance is subject to the harmless error test.").

6. Finally, no plain error resulted from the indictment's failure to allege, and the district court's failure to instruct on, the knowledge element of a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2) as established in *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019) (holding that the government "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the

*Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) ("A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a 'particularized need exists . . . which outweighs the policy of secrecy.'" (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959))).

6

relevant category of persons barred from possessing a firearm.").  Under plain error review, relief is not warranted unless there is "(1) error; (2) that is plain; (3) that affects substantial rights; and (4) where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Pelisamen*, 641 F.3d 399, 404 (9th Cir. 2011).  We conclude that Moore has not satisfied the fourth prong of the plain error standard, which requires her to "offer a plausible basis for concluding that an error-free retrial might end more favorably." *United States v. Johnson*, 963 F.3d 847, 852 (9th Cir. 2020); *see also United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019).  The record on appeal indicates that Moore had two previous felony convictions for which she served more than one year of imprisonment for each.  *See Johnson*, 963 F.3d at 852 (holding that, as part of our sufficiency-of-the-evidence analysis on plain-error review, we may "review the entire record on appeal—not just the record adduced at trial").

**AFFIRMED.**