**UNITED STATES of America,**
Plaintiff–Appellee,

v.

**Charlot E. THICKSTUN; John Nazaroff,**
Defendants–Appellants.

Nos. 96–30029, 96–30039.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 3, 1997.

Decided April 3, 1997.

---

John Bernitz, Anchorage, AK; Michael S. Taggart, Assistant Federal Public Defender, Anchorage, AK, for defendants-appellants.

William C. Brown, United States Department of Justice, Washington, DC, for plaintiff-appellee.

Before WRIGHT, WALLACE and HAWKINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

John Nazaroff and Charlot Thickstun were convicted of bribing an IRS agent. We hold that Thickstun was not entrapped simply because she could not have committed the crime without government assistance, and that she was not entrapped by her co-conspirator. We further hold that, for sentencing purposes, the benefit to be received from the crime was the total tax debt they sought to eliminate.[1]

## BACKGROUND

In 1994, IRS Agent Greg Hysom investigated John Nazaroff's unpaid income and employee withholding taxes. His total liability, including interest and fraud penalties, was estimated at $785,000. During the audit, Nazaroff offered Hysom a modeling job, which Hysom interpreted as a bribe overture. Hysom alerted his superiors, took a bribery awareness course, and commenced surveillance.

Nazaroff found someone else to do the modeling job, but he called Hysom repeatedly, even after the case was officially closed, to request reductions in the assessment. Ultimately, he offered Hysom $5,000 to "zero out" his liability. He then asked Hysom to help out a "gal-friend" who also had tax problems.

The friend, Charlot Thickstun, owed $476,000 in unpaid taxes with interest and penalties. She had commenced the offer and compromise process but had not reached a settlement with the IRS. She offered to pay Hysom $4,000 up front, and $1,000 later, if he would do the same thing for her that he had done for Nazaroff.

Hysom recorded his conversations with Nazaroff and Thickstun. They were arrested after paying him and were charged with bribery of a public official, 18 U.S.C. § 201, and conspiracy. Both claimed that they had been entrapped, but the jury rejected this defense and found them guilty. The court used the full amounts of their tax liabilities as the benefit received for sentencing purposes.

Thickstun argues that she was entrapped by Hysom as a matter of law, and that she is entitled to a new trial on the theory that Nazaroff entrapped her. Both challenge the calculation of their sentences. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## ANALYSIS

### I Entrapment As A Matter of Law

We review de novo whether a defendant was entrapped as a matter of law. *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir.1994). The entrapment defense has two elements: (1) government inducement to commit the crime and (2) absence of predisposition by the defendant. *Id.* At trial, the government bore the burden of proving beyond a reasonable doubt that Thickstun was predisposed before Hysom met her. *Jacobson v. United States*, 503 U.S. 540, 549, 112 S.Ct. 1535, 1540–41, 118 L.Ed.2d 174 (1992). We may reverse only if the evidence, viewed in the light most favorable to the government, could not permit a reasonable jury to find predisposition. *United States v. Hart*, 963 F.2d 1278, 1283 (9th Cir.1992).

### A. The Predisposition Factors

Five factors may be considered to show predisposition: (1) the defendant's character and reputation; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement. *United States v. McClelland*, 72 F.3d 717, 722 (9th Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 1448, 134 L.Ed.2d 567 (1996).

---

1. We address the other issues raised by appellants in an unpublished memorandum disposition.

Although none of the factors is conclusive, the defendant's reluctance is the most important. *Id.*

 First, the jury knew that Thickstun owed nearly half a million dollars in unpaid taxes and penalties. They were entitled to consider this, just as they could consider evidence of a lack of prior crimes or wrongdoing, to show predisposition. *See United States v. Marbella,* 73 F.3d 1508, 1512 (9th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 2555, 135 L.Ed.2d 1073 (1996).

Second, the jury heard her wiretapped conversations with Hysom, in which she broached the topic of the bribe.

Third, she does not dispute that she engaged in the activity for profit.

Fourth, the wiretapped conversations show no reluctance to commit the crime. On the contrary, the trial judge perceived that she was eager to do so:

I believed as I watched and as I listened that Mrs. Thickstun knew exactly what she was doing. I really can't think of another case that I have had recently where the words of a defendant struck me as forcefully as did the verbal demeanor, tone of voice—this sort of thing—and the words that were exchanged between Ms. Thickstun and the revenue agent when they first communicated with one another over the telephone.

I was frankly amazed at the receptivity that was expressed there. I had the impression up to that point that this was a situation where Mr. Nazaroff was in a misguided endeavor to help his girlfriend out of something that she was quite likely being—I thought—drug into against her will.

And when—Ms. Thickstun, when I heard you on that recorded call saying, Oh, Hysom; I want to talk to you—or words to that effect—the tone of voice was upbeat. It was positive. I just have to say that I do not doubt for one minute, I have no hesitation at all, as regards my belief that you knew precisely what you were doing and that you were not in this against your will or as a result of persuasion, undue persuasion or any kind of serious persuasion on the part of anyone else.

The transcripts corroborate those comments. Thickstun repeatedly thanked Hysom and told him that the erasure of her liability would be "wonderful." She also negotiated for additional benefits, such as a letter she could show to prospective employers. And she asked Hysom if he could help another friend with tax troubles.

 Although the evidence of Thickstun's eagerness arose after Hysom met her, the jury could rely on it to find that she was already predisposed to commit the crime. "[E]vidence of predisposition may arise both before the government's initial contact and during the course of dealings." *United States v. Garza–Juarez,* 992 F.2d 896, 908 (9th Cir.1993).

Finally, the government inducement was minimal. Hysom encouraged the bribe only by giving Thickstun the opportunity to make it. *See United States v. Manarite,* 44 F.3d 1407, 1418 (9th Cir.)("Mere suggestions or the offering of an opportunity to commit a crime is not conduct amounting to inducement."), *cert. denied,* — U.S. ——, 115 S.Ct. 2610, 132 L.Ed.2d 854 and — U.S. ——, 116 S.Ct. 148, 133 L.Ed.2d 93 (1995). There is no evidence that he attempted to exploit her. She argues that, by permitting her to pay in installments, he manufactured the bribe. She pressured him to permit such payment, however, even after he told her he would rather have a single transaction.

**B. "Positional" Predisposition**

 Each predisposition factor weighs against Thickstun. She urges us to look beyond the factors, however, and to follow the Seventh Circuit in holding that a defendant is "predisposed" only if she is actually in a position to commit the crime without government assistance. She relies on *United States v. Hollingsworth,* 27 F.3d 1196 (7th Cir.1994)(en banc)(6–5), which held that "[p]redisposition is not a purely mental state, the state of being willing to swallow the government's bait. It has positional as well as dispositional force." *Id.* at 1200. The court believed that *Jacobson* compelled this alteration of the law. We disagree.

In *Jacobson,* two different federal agencies spent 26 months mailing Jacobson letters from five fictitious organizations and a bogus pen pal, exhorting him to exercise his free

speech rights by purchasing child pornography. 503 U.S. at 543, 112 S.Ct. at 1537–38. The Court held that he had been entrapped as a matter of law, not because he could not have obtained the pornography without government assistance, but because of the improper methods that the government used:

[B]y waving the banner of individual rights and disparaging the legitimacy and constitutionality of efforts to restrict the availability of sexually explicit materials, the Government not only excited petitioner's interest in sexually explicit materials banned by law but also exerted substantial pressure on petitioner to obtain and read such material as part of a fight against censorship and the infringement of individual rights.

503 U.S. at 552, 112 S.Ct. at 1542.

Relying on *Hollingsworth*, Thickstun interprets *Jacobson* to hold that a defendant not only must intend to break the law but must be "ready" to do so prior to government contact. If she desires to commit a crime but lacks the means to accomplish it, and a government agent subsequently supplies those means, under Thickstun's reading of *Jacobson* she was entrapped.

We read *Jacobson* not as creating a requirement of positional readiness but as applying settled entrapment law. The inference that the government's methods had persuaded an otherwise law-abiding citizen to break the law, coupled with the absence of evidence of predisposition, established entrapment as a matter of law under the existing two-part test. It was not necessary for the court to expand the entrapment defense, nor is there language in the opinion indicating that it did so. While our reading conflicts with that of the Seventh Circuit in *Hollingsworth*, it accords with then-Judge Breyer's opinion in *United States v. Gendron*, 18 F.3d 955, 963 (1st Cir.1994).

Having concluded that *Jacobson* does not require "positional" predisposition, we decline to adopt such a requirement. A person's ability to commit a crime may illustrate her predisposition to do so, but should not become a separate element to be proven. *See Hollingsworth*, 27 F.3d at 1214–15 (Ripple, J., dissenting). Such a rule would be especially problematic in bribery cases. A person is never "positionally" able to bribe a public official without cooperation from that official.

## II *Entrapment by Unwitting Government Agent*

■ Thickstun argues that she was entrapped by Nazaroff, and that the court erred by denying her a new trial on this theory. We review de novo. *Davis*, 36 F.3d at 1430.

■ Only a government official or agent can entrap a defendant. *United States v. Emmert*, 829 F.2d 805, 808 (9th Cir.1987). Thickstun contends that Nazaroff was acting as a government agent, but this argument fails as a matter of law. He was a principal wrongdoer engaged in what he thought was a genuine criminal scheme. He did not know that he was working with the government.

■ Our past cases indicate that, in the entrapment context, agency may not be unwitting. *See Emmert*, 829 F.2d at 809; *United States v. Brandon*, 633 F.2d 773, 778 n. 5 (9th Cir.1980).[2] We now hold explicitly that a principal wrongdoer, not knowingly working for the government, cannot entrap his co-conspirator. We rely for our holding on the policy behind the entrapment defense, the problems of proof inherent in a private entrapment defense, and existing law.

The entrapment defense is narrow. It proceeds from the concept that "Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense but was induced to commit them by the Government." *United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973). Because the defense is rooted in congressional intent, and is "not intended to give the federal judiciary a 'chancellor's foot' veto"

---

2. Thickstun's reliance on cases involving paid informants is misplaced. They knew that they were working with the government. *See United States v. Davis*, 36 F.3d 1424, 1430 n. 2 (9th Cir.1994); *United States v. Skarie*, 971 F.2d 317 (9th Cir.1992); *United States v. Goodacre*, 793 F.2d 1124, 1125 (9th Cir.1986); *United States v. Cruz*, 783 F.2d 1470, 1473 (9th Cir.1986); *United States v. Busby*, 780 F.2d 804, 806–07 (9th Cir. 1986).

over federal prosecutions, *id.*, it does not apply when one criminal simply convinces another to join him in criminal enterprise. We assume that Congress did intend to punish such conduct.

Were we to recognize a private entrapment defense, the evidence necessary for the government to prove predisposition would involve purely private transactions and conversations between co-conspirators. As the First Circuit observed in *United States v. Bradley,* 820 F.2d 3 (1st Cir.1987), "[w]hen the issue is whether an ... intermediary entrapped the defendant, the government is a stranger to the entire transaction. Indeed, all witnesses will likely be hostile." *Id.* at 7.

Recognizing entrapment by an unwitting agent also would create a troubling inconsistency in the law, because we have rejected the related defense of "derivative entrapment." *Davis,* 36 F.3d at 1431; *United States v. Bonanno,* 852 F.2d 434, 439 (9th Cir.1988). Derivative entrapment occurs when an *entrapped* individual induces the defendant to commit a crime.[3] There is no reason to distinguish between a defendant induced to commit crime by a self-motivated private person and one induced by an entrapped private person. In neither case does the inducer realize that he is working on behalf of the government, and neither case implicates the policies behind the entrapment defense.

Other circuits have rejected the defense of entrapment by an unwitting agent. *See United States v. McLernon,* 746 F.2d 1098, 1109 (6th Cir.1984); *United States v. Beverly,* 723 F.2d 11, 12 (3d Cir.1983)(per curiam); *United States v. Dove,* 629 F.2d 325, 329 (4th Cir.1980); *cf. United States v. Washington,* 106 F.3d 983 (D.C.Cir.1997). Thickstun relies on cases that she says found entrapment by unwitting government agents, but are all derivative entrapment cases. *See Hollingsworth,* 27 F.3d at 1204 ("[T]here is a defense of derivative entrapment: when a private individual, himself entrapped, acts as agent or conduit for governmental efforts at entrapment, the government as principal is bound.");[4] *United States v. Jones,* 839 F.2d 1041, 1054 (5th Cir.1988)(applying "ignorant pawn" defense, which requires that private citizen be coerced into entrapping defendant); *United States v. Anderton,* 629 F.2d 1044, 1047 (5th Cir.1980)(same).

### III *Sentencing*

Both appellants argue that the court erred at sentencing when it calculated the benefit received from the crime as the total taxes they sought to erase with their bribes.[5] They argue that it should instead

---

3. The majority of circuits have rejected the derivative entrapment doctrine. *See United States v. Martinez,* 979 F.2d 1424, 1432 (10th Cir.1992)(listing cases). Even if we did recognize it, Thickstun could not rely on it because Nazaroff was not entrapped. *United States v. Nazaroff,* No. 96–30039 (9th Cir.1997)(memorandum).

4. Thickstun disagrees that *Hollingsworth* was a derivative entrapment case, apparently ignoring the text, 27 F.3d at 1204 ("[W]hile there is no defense of either private entrapment or vicarious entrapment, there is a defense of derivative entrapment...."). Further, the Seventh Circuit has since made clear that it recognizes derivative entrapment but no other defense of private entrapment. *See United States v. Neville,* 82 F.3d 750, 760 (7th Cir.1996).

5. The table in USSG § 2F1.1(b) determines the degree of enhancement. The court sentenced defendants as follows:

*Nazaroff:*

| | |
|---|---|
| Base Offense Level | 10 |
| Enhancement for 2 Bribes | +2 |
| Enhancement for Amt. of Loss | +11 |
| Accept. Responsibility | -2 |
| Total Offense Level | 21 |
| Criminal History Category | I |
| Guideline Range | 37–46 months |
| **Sentence** | **41 months imprisonment, 3 years supervised release, $150.00 fine** |

*Thickstun:*

| | |
|---|---|
| Base Offense Level | 10 |
| Enhancement for Amt. of Loss | +9 |
| Accept. Responsibility | -2 |
| Total Offense Level | 17 |
| Criminal History Category | I |
| Guideline Range | 24–30 months |
| **Sentence** | **24 months imprisonment 2 years supervised release, $150.00 fine** |

have used the amount of taxes they likely would have paid had they pursued the offer and compromise process to resolve their tax debts legally. We review de novo the interpretation and application of the sentencing guidelines. *United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir.1996).

The guideline for bribery of a public official is USSG § 2C1.1(b). It requires enhancement "[i]f the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense, whichever is greatest, exceeded $2,000." As a general rule, "[i]n a case involving bribery to cancel tax liability, the value of the benefit received from the bribe is the amount of the tax liability that the defendant sought to eliminate." *United States v. Dijan*, 37 F.3d 398, 403 (8th Cir. 1994). We decline to create a separate rule for defendants who consider, but do not pursue, the offer and compromise process. Defendants could have resolved their tax debts legally, but chose instead an illegal means and are bound by that choice.

For the same reason, it makes no difference that the IRS might never have recovered all taxes that defendants owed. They bribed a federal official to eliminate their entire tax liability, and should be sentenced on that basis. That appellants are indigent is irrelevant; it might be taken into account in the imposition of fines and restitution, but not in computing their terms of imprisonment.

## CONCLUSION

We hold that Thickstun was not entrapped as a matter of law. In so holding, we decline to impose a "positional predisposition" requirement and refuse to recognize entrapment by an unwitting government agent. We hold further that the taxes they sought to eliminate constituted the benefit to be received for sentencing purposes.

AFFIRMED.